Rushton Mining Company, Appellant, *v.* Commonwealth of Pennsylvania, Appellee.

136

Argued September 4, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Richard M. Sharp,* for appellant.

*Robert E. Yuhnke,* Assistant Attorney General, for appellee.

OPINION BY PRESIDENT JUDGE BOWMAN, November 15, 1974:

Appellant, Rushton Mining Company, operates a deep mine in Rush Township, Centre County. On July 11, 1972, the Department of Environmental Resources (DER) filed a criminal complaint charging appellant with violations of the Air Polluton Control Act, Act of January 8, 1960, P. L. (1959) 2119, *as amended*, 35 P.S. §4001 et seq. (Supp. 1974-1975) (Act). This complaint alleged that on or about June 9, 1972, the appellant, by the emission of coal dust into the atmosphere, caused "air pollution" as defined in the Act. Specifically, appellant was charged under Section 8 of the Act, 35 P.S. §4008, with failing to comply with Regulation 121.7 of the Rules and Regulations of DER, 25 Pa. Code §121.7. The complaint further charged that appellant, in violation of Section 8, failed to comply with an order issued to appellant on June 11, 1970, by the Department of Health, the predecessor of DER. This order, in pertinent part, prohibited appellant from causing air pollution in the operation of its facilities in Rush Township.

Pursuant to Section 9 of the Act, 35 P.S. §4009, summary proceedings were held before a justice of the peace. Appellant was found guilty of the offense charged and was sentenced to pay the maximum fine of $500.00. An appeal was taken to the Court of Common Pleas of Centre County, where a de novo hearing was held. The Court of Common Pleas affirmed the summary conviction and refused appellant's motion in arrest of judgment, from which order an appeal was taken to the Pennsylvania Superior Court, which, on appellant's motion, transferred the appeal to this Court.

The correlative elements of the criminal offense of "causing air pollution" are found in the Act and a regulation adopted under its authority. DER Regulation

121.7 states that "[n]o person shall cause, suffer, or permit air pollution as that term is defined in the act."[1] Section 3(5) of the Act, 35 P.S. §4003(5), defines "air pollution" as follows: "(5) 'Air pollution.' The presence in the outdoor atmosphere of any form of contaminant including but not limited to the discharging from stacks, chimneys, openings, buildings, structures, open fires, vehicles, processes, or any other source of any smoke, soot, fly ash, dust, cinders, dirt, noxious, or obnoxious acids, fumes, oxides, gases, vapors, odors, toxic or radioactive substances, waste, or any other matter in such place, manner, or concentration inimical or which may be inimical to the public health, safety, or welfare or which is, or may be injurous to human, plant or animal life, or to property, or *which unreasonably interferes with the comfortable enjoyment of life or property.*" (Emphasis added.) Section 8 of the Act, 35 P.S. §4008, lists the various criminal offenses: "It shall be unlawful *to fail to comply with any rule or regulation* or to fail to comply with any order of the department, to violate or to assist in the violation of any of the provisions of this act or rules and regulations adopted hereunder . . . ." (Emphasis added.) Sections 3(5) and 8 of the Act, as they appear above, are the provisions of the law as it existed at the time of appellant's alleged offense. Both sections were subsequently amended by the Act of October 26, 1972, P. L. , No. 245. Regulation 121.7 has been in the form set forth above since its adoption.

Appellant appeals from its conviction on three grounds: (1) that Regulation 121.7 is improper and

---

[1] Rules and regulations of the Environmental Quality Board when formally adopted by the Board become rules and regulations of the DER. Section 1920-A(b) of the Administrative Code of 1929, the Act of April 9, 1929, P. L. 177, art. XIX-A, added by Act of December 3, 1970, P. L. 834, §20, 71 P.S. §510-20.

unenforceable in that, at the time of appellant's alleged offense, the General Assembly did not intend the definition of "air pollution" as contained in Section 3(5) to be the basis for a criminal offense under the Act; (2) that evidence in the form of testimony as to visual observations cannot support a conviction under the Act; and (3) that the scientific evidence introduced by the Commonwealth in the lower courts was irrelevant to show that emissions from appellant's stockpiles exceeded the technical limits established by DER in Chapter 123 of its Rules and Regulations, 25 Pa. Code §123.1 et seq.

In support of its first argument, appellant relies heavily on Section 8 as amended subsequent to the date of the alleged offense. By the Act of October 26, 1972, Section 8 was amended to read "[i]t shall be unlawful . . . to cause air pollution." Appellant sees this amendment as indicative of a legislative intent prior to said amendment that the rule-making power be limited to the establishment of quantitative or qualitative standards of particulate emission and like technical subjects. The Court must disagree with appellant on this issue. Appellant has been unable to produce any support for the process of statutory construction it employed in arriving at this conclusion. The cases cited by appellant, and others, do hold that changes in statutory language cannot be disregarded. "The Legislature cannot be deemed to intend that its language be superfluous and without import." *Daly v. Hemphill,* 411 Pa. 263, 273, 191 A. 2d 835, 842 (1963). However, in each of these cases, the statutory changes were used by the court in construing the *amending* language, rather than the *amended* language. We are not here concerned with the meaning of Section 8 as amended in 1972. The question before this Court is whether the wording of the Act and its underlying intent, as they existed at

the time of appellant's alleged offense, precluded the adoption of Regulation 121.7 as beyond the rule-making authority conferred. There is no language in the 1968 expression of the Act which would indicate a legislative intent that the rule-making power be restricted to high-ly technical regulatory procedures in the control and prevention of air pollution. In Section 5(d)(2), 35 P.S. §4005(d)(2),[2] the regulatory body is given the power to "[a]dopt rules and regulations for the control of air pollution in regions or parts thereof." In the same section, the regulatory body is given the power to consult with technical advisers, but only "to the extent deemed desirable by it." Such broad and discretionary language fails to support appellant's restrictive interpretation. Further, a legislative intent contrary to that espoused by appellant appears in the Legislature's declaration of policy in Section 2, 35 P.S. §4002, of the Act. As originally passed in 1960, Section 2 read as follows: "It is hereby determined and declared to be the policy of the Commonwealth of Pennsylvania to maintain such a reasonable degree of purity of the air resources of the Commonwealth as shall be *technically feasible, economically reasonable,* and necessary for the protection of the normal health, the general welfare and the property of the people of the Commonwealth. . . ." (Emphasis added.)

In 1968, Section 2, as originally enacted, was deleted and replaced by a new declaration of policy disclosing a marked shift from combating air pollution within limitations of technical feasibility and economic reasonableness to protection not only of the air resource itself, but also of the public health, property and recreational resources of the Commonwealth. Act of June 12, 1968, P. L. 163, §1.

---

[2] Here, as earlier, the quoted provisions refer to the Act as it existed at the time of appellant's alleged offense.

Given this policy declaration and the rule-making power, we believe that the statutory law, in effect at the time of appellant's alleged offense considered within the context of the legislative history of the Act, clearly supports the statutory power and authority of the regulatory body to adopt Regulation 121.7. It, therefore, is lawful and properly within the correlative elements comprising the criminal offense charged.

Much of the evidence presented by the Commonwealth in support of the offense charged consisted of oral testimony by appellant's neighbors as to the effects of appellant's emissions on their properties. There was testimony as to the highly visible presence of coal dust on swimming pools, the outsides of houses, and indoor furnishings. Appellant now questions the sufficiency of such evidence to support a conviction in a criminal action brought pursuant to the Act. In *Bortz Coal Co. v. Commonwealth,* 2 Pa. Commonwealth Ct. 441, 458, 279 A. 2d 388, 398 (1971), this Court cited the inadequacy of visual tests and observations "where recognized scientific tests are available." However, in the same case, the Court foresaw prosecutions under the Act where such tests would not be available: "In the event it should occur in a case that there is no scientific measurement instrument, or no method for determining a violation, then as in all adjudicated matters in this Commonwealth, violations will have to be determined upon the weight of the evidence produced." 2 Pa. Commonwealth Ct. at 458, 279 A. 2d at 398. This Court has no knowledge as to the availability of a scientific measurement instrument which could gauge whether an atmospheric contaminant "interferes with the comfortable enjoyment of life or property," 35 P.S. §4003(5), or of a method for determining whether such interference is "unreasonable," 35 P.S. §4003(5). These are purely subjective standards, incapable of reduction to scientific precision. While scientific evidence

142

may be helpful in this type of case, it is not necessarily the most persuasive nor the exclusive means of proof. Our review of the record persuades us that there was sufficient evidence to permit the lower court to properly conclude that DER had proved the elements of the offense charged.

Appellant also contends that the scientific evidence introduced by the Commonwealth in the lower courts was irrelevant to prove a violation of the highly technical provisions of Chapter 123 of DER's Rules and Regulations. If this evidence was, in fact, irrelevant, appellant's argument is even more so. The criminal complaint which initiated this action neither expressly nor impliedly referred to the provisions of Chapter 123. Appellant was charged with "causing air pollution" in violation of Regulation 121.7 and Section 8 of the Act, proof of which does not require any scientific evidence, much less a particular kind.

Since Regulation 121.7 represents sufficient grounds to support appellant's conviction, no discussion as to the Department of Health order of June 11, 1970, is necessary.

The order of the Court of Common Pleas of Centre County is hereby affirmed.

---

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent. I cannot reach the majority's conclusion that lay witness testimony alone may support a conviction for causing air pollution, which is defined as the presence in the outdoor atmosphere of coal dust which unreasonably interferes with the comfortable enjoyment of life or property.

My understanding of the Air Pollution Control Act, Act of January 8, 1960, P. L. (1959) 2119, *as amended,* 35 P.S. §4001 et seq. (Supp. 1974-1975) (Act), indicates that, for conviction of a criminal offense, it is necessary to prove that an established standard was vio-

lated. Section 5 of the Act, 35 P.S. §4005, *as amended* by the Act of June 12, 1968, P. L. 163, No. 92, §5, provided, in pertinent part:

"(d) The Commission shall have the power and its duty shall be to—

. . . .

"(2) Adopt rules and regulations for the control of air pollution in regions or parts thereof . . . .

. . . .

"(6) Establish and publish maximum quantities of air contaminants that may be permitted under various conditions at the point of use from any air contaminant source in various areas of the Commonwealth so as to control air pollution.

"(7) By rule or regulation, classify air contaminant sources, according to levels and types of emissions and other characteristics which relate to air pollution."

I cannot accept the premise that the Legislature, in defining "air pollution" in Section 3(5) of the Act, 35 P.S. §4003(5), intended that definition to set the standard for unlawful conduct.

My view of this case is that, in the absence of a rule or regulation establishing a standard for the quantity of air contaminants permitted under various conditions, the appellant here was not in violation of the Act or Regulation 121.7 of the Rules and Regulations of the Department of Environmental Resources, 25 Pa. Code §121.7.